UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

JOHN E. RAMEY )
)
V. ) NO. 2:14-CV-269
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's application for disability insurance benefits was administratively denied following a hearing before an Administrative Law Judge ["ALJ"]. The present action is one for judicial review of that adverse decision. The Plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 14], while the Defendant Commissioner has filed a Motion for Summary Judgment [Doc. 18].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor
Case 2:14-cv-00269-JRG-MCLC   Document 20   Filed 08/24/15   Page 1 of 14   PageID #: 549

resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff has an education beyond high school, having past relevant work as an LPN, which is skilled (Tr. 80). He is presently 59 years of age, which is "advanced age" under the Social Security Regulations. No one disputes that he cannot return to his past relevant work.

Plaintiff was found by the ALJ to have severe impairments from a history of a broken foot, a history of seizure, a history of insomnia, depression and panic attacks. (Tr. 37). His medical history is summarized in the Defendant's brief as follows:

> Plaintiff saw Bernard Prudencio, M.D., in April 2010 for a medication checkup (Tr. 309). Plaintiff had recently fractured his foot in November 2009, but he stayed healthy, alert, and ambulatory on examination (Tr. 276, 309). A physical examination was normal, and the doctor refilled medications to treat panic attacks and insomnia (Tr. 309).
> The next month, Plaintiff saw podiatrist Robert Hoover for a follow-up appointment following foot surgery (Tr. 270). Radiographs showed no evidence of re-injury, and Plaintiff was instructed that he could slowly graduate from a walking boot into a hiking or tennis shoe (Tr. 270).
> In July 2010, Plaintiff returned to Dr. Prudencio for severe stomach pain (Tr. 308). On examination, Plaintiff stayed alert and ambulatory (Tr. 308). Dr. Prudencio refilled Plaintiff's medications and treated a stomach infection (Tr. 308). Plaintiff returned to Dr. Prudencio in October 2010 for a checkup

appointment and medication refills (Tr. 307). He remained alert and ambulatory (Tr. 307).

In October 2012, Plaintiff also sought care at Sunrise Primary Care (Sunrise) (Tr. 428). He complained of right hip pain and said he did not sleep well (Tr. 428). On physical examination, he had tenderness in his hip, but no decrease in range of motion (Tr. 428). He was falling down and appeared incoherent (Tr. 428). Plaintiff returned to Sunrise in February 2011 and complained of an unsteady gait and dizziness (Tr. 425). He was diagnosed with cellulitis in his right knee (Tr. 425).

Plaintiff went to the emergency room on New Year's Day 2011 for a seizure (Tr. 288-305). He said he was standing when he started seizing, and he fell and hit his head on the concrete (Tr. 288). The seizure was brief, lasting only seconds, and Plaintiff showed no post-ictal symptoms in the emergency room (Tr. 288). He reported recent sleep deprivation, and he had recently stopped taking an antidepressant medication "cold turkey" (Tr. 288). He reported no similar symptoms previously (Tr. 288). On examination, Plaintiff showed normal range of motion in his extremities, normal reflexes, no motor deficit, and no sensory deficit (Tr. 289). A CT scan of the head showed no acute intracranial abnormalities (Tr. 289). Medical providers concluded that Plaintiff's seizure was related to sleep deprivation and recommended rest for five days (Tr. 291-92, 296). Plaintiff was discharged in stable condition the same day (Tr. 296).

In February 2011, Dr. Prudencio wrote a letter in which he stated that Plaintiff was under his care for insomnia, depression, and a seizure disorder (Tr. 306). Dr. Prudencio opined that "he is unable to perform his duties as a Licensed Practical Nurse" (Tr. 306).

Later that month, Nurse Charlotte Preston-Santa wrote a letter in support of Plaintiff's disability claim (Tr. 320-22). Ms. Preston-Santa stated that she worked as an outside consultant at a nursing center where Plaintiff used to work as an LPN (Tr. 320). She stated that Plaintiff had depression and anxiety, as well as the complicated healing of his November 2009 left foot injury (Tr. 321). She opined that Plaintiff became unable to work in 2010 as his emotional, physical, and financial status deteriorated (Tr. 321). Ms. Preston-Santa expressed her belief that Plaintiff's situation warranted disability benefits, and she assessed a global assessment of functioning (GAF) score of 75 (Tr. 322).

Later in 2011, after Plaintiff's disability claim was denied at the state level, Ms. Preston-Santa wrote another letter in support of his claim (Tr. 323-24). Ms. Preston-Santa opined that Plaintiff had "several definitive seizures" that were not documented in his medical records because he had no insurance (Tr. 323). She also opined that Plaintiff had significantly impaired memory (Tr. 323).

In April 2011, Plaintiff saw Louis Legum, Ph.D., for an evaluation at the request of the state agency (Tr. 325-30). Plaintiff reported living on his own for the last six years, and he did not report any problem taking care of basic daily activities (Tr. 325-26). He reported no subsequent seizures since the one on New Year's Day (Tr. 327). Dr. Legum questioned "whether [Plaintiff's] present

3

> medical issues might allow him to carry out his duties as an LPN," but concluded that Plaintiff did not have a cognitive or psychological incapacitation that would preclude him from gainful employment (Tr. 329).
>
> On referral from his disability attorney, Plaintiff began seeing a mental health counselor, Christopher Allen, in August 2011 (Tr. 362). Plaintiff had recently moved to Tennessee and was living with his mother and stepfather (Tr. 362). He reported panic attacks, a seizure disorder, and headaches, and he said he had trouble completing daily activities (Tr. 362).
>
> Plaintiff continued seeing Mr. Allen for monthly therapy sessions through 2012 (Tr. 358-61, 370-72, 390-97). Plaintiff consistently appeared depressed and tearful during therapy (Tr. 358-61, 370-72, 390-97). At various times, he listed coping skills that helped improve his mood, including talking with friends in Florida, talking with his preacher in Florida, listening to music, reading a daily devotional, and watching television (Tr. 370-72, 390, 392-96). At one session, he listed riding his bicycle as a coping mechanism, and at another he listed taking walks (Tr. 392-93). In April and May 2012, Plaintiff said his goal for therapy was "to get a disability hearing" (Tr. 395-96). He subsequently said his goal was "to reduce symptoms of depression and anxiety," to which he reported "some" or "limited" progress (Tr. 390, 392-93).
>
> In November 2011, Plaintiff saw John Ludgate, Ph.D., on referral from his attorney, for a mental status assessment (Tr. 363-69). Dr. Ludgate opined that Plaintiff "would be unable to work at this time due to both his medical problems and also due to significant mood disturbance, anxiety[,] and panic attacks which would impair his personal, occupational[,] and interpersonal functioning" (Tr. 366). Dr. Ludgate indicated that Plaintiff had mostly fair ability to perform work-related mental activities (Tr. 367-68).
>
> Four of Plaintiff's friends wrote letters in support of his disability claim in March and April 2012 (Tr. 373-76).

[Doc. 19, pgs. 2-5].

Two administrative hearings were held in this case. The first one was held on May 15, 2012. The second was held on October 2, 2012. Plaintiff testified at both. At the first hearing, Dr. Susan Bland, a medical doctor, testified as a medical expert (Tr. 75-79). Although a vocational expert ["VE"] was present, and was asked some questions by the Plaintiff's attorney, the ALJ requested more information before questioning the VE.

4

At the second hearing, the ALJ called Dr. Robert Spangler, another VE, as a witness. He asked him to assume that the Plaintiff "is limited to medium work, that he should do simple, repetitive tasks with things rather than people." When asked if there would be jobs, Dr. Spangler identified 33,474 jobs in the local economy and 1,408,895 jobs in the national economy which such a person could perform. If the person had "seizure restrictions," Dr. Spangler opined that 40% of the identified jobs would be beyond Plaintiff's capabilities. (Tr. 53-55). This would leave approximately 20,000 jobs in Tennessee and over 845,000 jobs in the national economy which the person with these limitations could perform, according to Dr. Spangler's original numbers.

The ALJ rendered his hearing decision, which became the final decision of the Commissioner on Plaintiff's claim, on November 6, 2012 (Tr. 35-45). The ALJ found that the Plaintiff meets the insured status requirements through December 31, 2015, and that he has not engaged in substantial gainful activity since his alleged disability onset date of May 22, 2010. As previously stated, he found that the Plaintiff had severe impairments of a history of a broken foot, a history of seizure, a history of insomnia, depression and panic attacks. He found that the Plaintiff's impairments, either individually or in combination, did not meet or equal any of the listed impairments in Appendix I of 20 CFR Part 404, Subpart P. (Tr. 37). As part of the process of making this determination, the ALJ found that the Plaintiff has a mild limitation in his activities of daily living, moderate limitations in social functioning, and moderate limitations in maintaining concentration, persistence or pace. He also found that Plaintiff had not

5

suffered any extended "episodes of decompensation." (Tr. 38). These findings (if correct) establish that the Plaintiff does not meet or equal any mental listing.

The ALJ then determined that the Plaintiff had the residual functional capacity ["RFC"] "to perform simple, routine, repetitive medium work…,working with things rather than people." (Tr. 38). He then stated that impairments must be established by medical findings to support their existence and effects, and not just by a claimant's description of his or her symptoms. (Tr. 39). He then discussed in detail the medical evidence (Tr. 39-42). It should be noted at this point that in this portion of the decision, the ALJ mentions the testimony of "Medical Expert Dr. Theron Blickenstaff." Dr. Blickenstaff, whom this particular ALJ uses as a testifying medical expert in many of his adjudications, did not participate in this case either at the hearing or otherwise. However, it is clear to the Court that the ALJ was referring to the testimony of Dr. Susan Bland who did appear and testify as a medical expert at the first hearing on Plaintiff's claim. This is obvious because the ALJ recounts that the medical expert was "asked if he would limit the claimant to the performance of light work," and replied "no." The ALJ also stated that the medical expert "testified that he did not know if the claimant experienced a true seizure or the seizure was caused [*sic*] by stopping medications." (Tr. 40-42). Once again, this is a reference to the statements of Dr. Bland (Tr. 77-78), and these topics were the subject of the off-the-record discussion between the ALJ and Dr. Bland described below. Thus, although the ALJ referred to a different doctor of a different gender when he wrote his hearing decision almost six months after Dr. Bland testified, it is clear to this

6

Court that the hearing decision is referring to her testimony, and that the references to Dr. Blickenstaff are accidental.

The ALJ also noted the contents of certain notarized statements from friends of the Plaintiff in the State of Florida regarding his condition (Tr. 42).

The ALJ then stated that although the Plaintiff did suffer from the severe impairments the ALJ found to be supported by the evidence, he did not find that the Plaintiff's testimony regarding their limiting effects was credible to the extent that the testimony would preclude performance of tasks within the ALJ's RFC finding. (Tr. 42).

He then discussed the weight given by him to the various medical opinions contained in the record. Consistent with the opinion of the State Agency physician, he gave little weight to the opinion of Dr. Purdencio because it was not well supported. Likewise, he found that the opinion of Dr. Ludgate, a one-time consultative examiner, was not well supported, inconsistent with other evidence, and gave it little weight as well. The same was true with the opinion of Nurse Preston-Santa because he found it to be "inconsistent with the objective evidence and based in part upon the claimant's financial concerns and loss of Unemployment Compensation." With respect to Mr. Allen, the ALJ gave his overall assessment little weight, but found it was "not inconsistent with some of the limitations" utilized by the ALJ in his RFC finding and question to the VE. He gave "more weight" to the State Agency physical assessment because that doctor found no restrictions on lifting, standing or walking, but less weight to the State Agency psychologists because, unlike them, he found that the Plaintiff's subjective complaints

7

indicated the existence of a severe mental impairment. (Tr. 42). Likewise, he only gave some weight to the consultative examination by Dr. Legum. Although Dr. Legum opined based upon memory testing that the Plaintiff had no memory deficits, and that he had no "cognitive or psychological incapacitation that would preclude him from gainful employment," the ALJ once again felt that the Plaintiff had established the existence of a severe mental impairment imposing some restrictions on his ability to perform work-related tasks. He likewise considered the aforementioned letters from the Plaintiff's friends. (Tr. 43).

He then found that the Plaintiff was incapable of performing his past relevant work as an LPN and had no transferable work skills. However, based upon the testimony of Dr. Spangler and the jobs he identified, he found that the Plaintiff was not disabled (Tr. 43-44). He also found that the Plaintiff's prior alcohol abuse was "in sustained remission" and was not a factor in the ALJ's decision. (Tr. 44).

Plaintiff's first issue relates to the off-record questions asked of Dr. Bland by the ALJ. Plaintiff correctly states that according to the Social Security Administration's Hearings, Appeals and Litigation Manual ["HALLEX"], an ALJ may not engage in an off-the-record discussion with a medical expert regarding a claimant's case. The ALJ clearly did so (Tr.78) with respect to whether Dr. Bland was going to limit the Plaintiff to light work and about whether the Plaintiff's seizure was a true seizure or was induced by a cessation of medication. Determining whether the Plaintiff was limited to light work was important because if she had so limited the Plaintiff, given his "advanced age," he

8

would likely have been disabled under Rule 202.06 of the Medical-Vocational Guidelines [the "Grid"]. However, the HALLEX also provides a remedy to "cure" such a situation. As quoted by the Plaintiff, if an ALJ has such a conversation, "he must summarize the discussion on the record at the hearing or in a written summary entered into the record as an exhibit." [Doc. 15, pgs. 12, citing HALLEX 1-2-5-32]. This is precisely what the ALJ did. Dr. Bland indicated that was the total extent of the off-record discussion, and counsel for the Plaintiff at the hearing did not cross-examine Dr. Bland if there were any other matters discussed pre-hearing with the ALJ which he did not clarify on the record. The Court finds that the ALJ did in fact comply with the HALLEX provision by describing his colloquy with Dr. Bland on the record.

Plaintiff also complains that the RFC finding and the hypothetical question to the VE were not supported by substantial evidence because he did not include the "precautions for possible seizure" included in the testimony of Dr. Bland (Tr. 78). Dr. Bland did in fact so state, but was very equivocal, having just said that one documented seizure appeared "to be possibly related to medication withdrawal and sleep deprivation." (Tr. 78). Her mention of this appears to have motivated the ALJ to bring up their off-the-record discussion which included doubts about whether the seizure was induced by "the stop of medication" rather than a true seizure disorder with the possibility of recurrence. One must also bear in mind that the State Agency doctor found no physical limitations in this regard and discussed the seizure incident, flatly stating that "[t]his episode was associated with sleep deprivation and 'cold turkey' discontinuation of his antidepressant,"

9

followed by a normal exam and no further documented episodes. (Tr. 347). However, whether the ALJ erred by not including "seizure precautions" in his RFC, the VE testified that their inclusion would have only reduced the available jobs by 40%, leaving a significant number of jobs the Plaintiff could perform even if he had an ongoing seizure disorder. Thus, the Court finds that any error in this regard was harmless.

The Plaintiff next asserts that the RFC was not supported by substantial evidence because the Plaintiff's severe mental impairments were not adequately accommodated by merely restricting him to jobs working with things and not people, citing *Ealy v. Commissioner of Soc. Sec.*, 594 F.3rd 504 (6th Cir. 2010). Plaintiff also asserts that his mental impairment was far more restrictive than the moderate limitations found by the ALJ in social functioning and concentration, persistence or pace.

In *Ealy*, the hypothetical asked by the ALJ to the VE was somewhat similar to that used by the ALJ in the present case in that it described an individual who should not work with the public. He asked the VE to "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id*. at 516. In that case, the ALJ was relying upon the opinion of a state agency psychologist. The Sixth Circuit noted that the ALJ stated that his assessment was "consistent" with that of the psychologist. The problem was that it was not. One of the state agency psychologist's specific findings was that the ability of Mr. Ealy to sustain attention to complete simple repetitive tasks was limited to [two-hour] segments over an eight hour day where speed was not critical." *Id*. The Court stated that for the ALJ's hypothetical to accurately

10

describe Mr. Ealy's situation, it would have to state that "the speed of his performance could not be critical to his job." In the present case, there is no such special requirement, only a moderate limitation. The Court finds that the hypothetical question in the present case was adequate to express the limitations found by the ALJ.

Likewise, the Court finds that there was substantial evidence for those limitations in the reports of the State Agency psychologists and the report of Dr. Legum. The ALJ rejected their findings of very mild to no mental limitations in making the finding he did.

Plaintiff also takes issue with the ALJ's failure to not give the report of Dr. Prudencio controlling weight as a treating physician. Dr. Prudencio was a treating doctor. However, all he apparently did was prescribe medications such as Xanax, perform physical examinations, and treat Plaintiff for physical ailments. His opinion was not stated in terms of restrictions on activities, but said Plaintiff was unable to perform his duties as an LPN and that in his opinion, Plaintiff was now disabled.

As previously stated, in his hearing decision the ALJ did not give controlling weight to Dr. Prudencio's opinion. In fact, he gave it little weight, citing the opinion of the State Agency doctor that it was inconsistent with the objective medical evidence, including Dr. Prudencio's examination reports. The "opinion" that Plaintiff was disabled was on a matter reserved to the Commissioner, and as such is not a medical opinion entitled to any particular weight. *Johnson v. Commissioner of Soc. Sec.*, 535 F.App'x 498 (6th Cir. 2013). Likewise, Dr. Prudencio's examination notes described normal

11

physical examinations and noted the Plaintiff was "healthy," "alert," and "ambulatory" (Tr. 307-309).

Likewise, the ALJ gave little weight to Dr. Ludgate. Dr. Ludgate is not entitled to the deference afforded to the supported opinions of a treating source. Also, Dr. Legum's report and the other evidence mentioned above contradict his findings. The opinion of Ms. Preston-Santa, one of Plaintiff's therapists, who was not an acceptable medical source, was considered but given little weight for the same reasons, especially since Dr. Legum's testing revealed no significant memory difficulties. Also, her opinion was based in part upon the Plaintiff's testimony regarding multiple seizures, but Plaintiff reported in April of 2011 that he had not had a seizure since the one documented seizure in January of that year. Also, Ms. Preston-Santa assigned a Global Assessment of Functioning of 75, which indicates no more than a slight impairment in social functioning. *See Diagnostic and Statistical Manual of Mental Disorders, 4th Edition,* at 32-34. Finally, the ALJ gave little weight to Mr. Allen, the therapist at Frontier Health. Plaintiff asserts that the ALJ mistakenly said that Mr. Allen's opinion was consistent with his RFC finding. What the ALJ actually said, as stated above, was that Mr. Allen's opinion "is not inconsistent with some of the limitations" in the RFC and hypothetical to the VE, which is a true statement. (Tr. 42).

The ALJ also considered and mentioned the letters from Plaintiff's friends. Considering them is all that is required, and he did so. The Court is unaware of a requirement that he state the weight attached to such evidence.

Case 2:14-cv-00269-JRG-MCLC   Document 20   Filed 08/24/15   Page 12 of 14   PageID #: 560

The Court finds that the ALJ did not exceed his authority as trier of fact or violate the regulations and case law in his assessment of the weight given to the various medical sources.

Plaintiff next argues that the ALJ improperly found him less than credible. The ALJ considered the Plaintiff's subjective complaints, noted his daily activities, and all of the medical evidence in the record. As previously stated, he found that the Plaintiff possessed more credibility than Dr. Legum or the State Agency psychologists. He, as the finder of fact, did not abuse his discretion and amply discussed the evidence upon which he relied in determining that the Plaintiff was not entirely credible.

Finally, Plaintiff asserts that the ALJ did not follow the dictates of Social Security Ruling 83-12, and should have found Plaintiff disabled because his RFC placed Plaintiff below the full range of medium work, at which level he would be not disabled, and above the full range of light work, where he would have been disabled under the Grid. However, SSR 83-12 recommends that in such cases it is advisable for the ALJ to consult a vocational expert, which is precisely what he did. This was not error.

The Court finds that there was substantial evidence to support the ALJ in his RFC finding and his question to the VE. Also, even if the failure to include seizure restrictions in the RFC finding was error, the error was harmless because the VE identified a significant number of jobs in the national and local economies which could be performed by Plaintiff even with seizure restrictions. The ALJ also complied with the regulations in his adjudication of this case. Accordingly, it is respectfully RECOMMENDED that the

13

Plaintiff's Motion for Judgment on the Pleadings [Doc. 14] be DENIED, and the Defendant Commissioner's Motion for Summary Judgment [Doc. 18] be GRANTED.[1]

Respectfully submitted,

s/Clifton L. Corker
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).